JORDAN P. BREWSTER, ESQ.
ATTORNEY ID#002272011
LAW OFFICE OF JORDAN P. BREWSTER
14 Pine Street, Suite 7
Morristown, N.J. 07960
973-500-6254

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORDAN P. BREWSTER,<br><br>                              Plaintiff;<br><br>v.<br><br>GETATAXLAWYER.COM LLC, a limited liability company formed under the laws of Delaware; AMERICAN TAX SOLUTIONS, a corporation formed under the laws of California, A/K/A ATS TAX GROUP; AMERICAN TAX SOLUTIONS, LLC, a limited liability company formed under the laws of Delaware; TYLER BENNETT, ESQ.; EQUITY FINANCE, INC., a corporation formed under the laws of Delaware; JOHN and JANE DOES, 1-10; and ABC CORPORATIONS, 1-10; all to be held by jointly and severally liable;<br><br>                              Defendants. | **Civil Action No.**<br><br><br>**COMPLAINT<br>AND<br>JURY TRIAL DEMAND<br>AS TO ALL COUNTS** |

Plaintiff, JORDAN P. BREWSTER ("Plaintiff"), by way of Complaint against defendants,

GETATAXLAWYER.COM LLC; AMERICAN TAX SOLUTIONS, A/K/A, ATS TAX

GROUP; AMERICAN TAX SOLUTIONS, LLC; TYLER BENNETT, ESQ. (collectively

referred to as "GATL" or "ATS" or "GATL/ATS"); EQUITY FINANCE, INC. ("Equity"); JOHN

and JANE DOES, 1-10; and ABC CORPORATIONS, 1-10; ("Defendants"); states as follows:

## NATURE OF THE ACTION

1.     This matter is for recompense on the part of the Plaintiff for monies that were paid by Plaintiff to Defendants for what was averred by GATL/ATS as tax resolution services for which the Plaintiff paid monies to resolve, as well as to seek punitive measures against the Defendants for the propagation of their enterprise in defrauding innocent consumers. In truth, the tax resolution service is a scam, and once the victim pays the money, nothing is done, but GATL engages in a series of actions that cause the victim to think something might be done, with multiple email correspondence and phone calls from various components of GATL/ATS that lead one to think something is happening what it is not. In the process of selling this "service" GATL makes a number of fraudulent statements that induce the victim to pay a hefty sum of money to them without providing any service, all of which violates the New Jersey Consumer Fraud Act, as well as all notions of common law fraud.

       In furthering this scheme, GATL utilizes the service of a finance company, Equity, to pay for the alleged service in a scheme for a service that was never to be performed by GATL. Plaintiff believes that GATL Defendants, all separate entities, and Equity are all engaged in what is a conspiracy to fraudulently sell and then finance a never-to-be-provided service, and then continue to perpetrate their scheme through predicate acts of wire fraud that continue the scheme, giving rise to a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") violation, as it is clear the service was never intended to be provided and was merely a fraud and financed through Equity to further the scheme.

## JURISDICTION AND VENUE

2.     This is a civil action brought pursuant to 28 U.S.C. § 1332. The matter is distinctly

between citizens and/or entities in other states, and the matter and the amount in controversy is $75,000 or more.

3.     Further to diversity jurisdiction, this matter avers a violation of federal law under 18 U.S.C. § 1964, as an artifice and scheme were employed to siphon funds from the Plaintiff in a purposeful scheme to defraud unsuspecting victims by offering never-to-be-provided services for large sums of money, in conjunction with a finance company in a conspiracy to finance alleged tax resolution services that are never to be rendered.

4.     In addition to the above cited authority 28 U.S.C. § 1367 is invoked by the allegations of this pleading, as one of the defendants is as practicing attorney, who in engaging plaintiff, committed malpractice for which raises a complex issue of New Jersey State Law and which substantially predominates over the claim or claims over the district court has original jurisdiction.

## **PARTIES**

5.     Plaintiff is a citizen of the United States. He was, at all relevant times, and resides at 15 Corwin Street, Randolph, N.J.

6.     The GATL/ATS Defendants, are a series of companies, all affiliated with another, and operating as one singular enterprise, formed under the laws of the State of California, or depending, formed under the laws of the State of Delaware, all having addresses at 1055 W. 7th Street, Suite 1600, Los Angeles. C.A. 90017, 811 Wilshire Boulevard, Suite 1700, Los Angeles, C.A., or 25910 Acero, Suite 140. Mission Viejo, C.A. 92691.

7.     Defendant EQUITY SALES FINANCE, INC, is a corporation formed under the laws of the State of Delaware and has an office located at 1200 Ford Road, Suite A, Hopkins, M.N. 55305.

8.     Defendant TYLER BENNETT, ESQ. is an attorney licensed in the State of California, and seemingly one of the main principals of GATL, who advertised GATL's services on national news shows and websites and is likely the main head of GATL and a person who directly profits from GATL's activities, having an address at 1055 W. 7th Street, Suite 1600, Los Angeles, C.A. 90017.

## FACTS COMMON TO ALL CLAIMS

9.     It was the beginning of August 2022. At that time, the Covid pandemic had finally totally wound down.

10.     As with many families, the pandemic took an extreme toll on Plaintiff's family (the "Brewster family").

11.     The Brewster family was hit particularly hard as when the pandemic began, as Mr. Brewster was the sole bread winner and did as such by running his own law practice.

12.     Just at that time, Mrs. Brewster was going to reenter the workforce after having two children, but these plans were dashed when the country shut down in March 2020, and no one was hiring.

13.     At the beginning of the pandemic, Mr. Brewster lost all his staff and was left to run the practice all by himself. This did not allow the time for him to bill the time necessary to make ends meet, in addition to attending to the various administrative functions of the firm, which included bookkeeping and attending to tabulating revenue, preparing P&Ls for tax returns, etc.

14.     In addition to these difficulties, the entire New Jersey Court System would essentially be shut down for two years, causing all cases to stall and for any income on contingency matters to be left in doubt. In fact, it was so overwhelming, Mr. Brewster never even got a chance to get the books together enough to file for PPP loans, etc. Essentially, Mr. Brewster and the

4

Brewster family, as with many other families in America, and across the globe, went into survival mode.

15.     It must be made clear that as the COVID pandemic started to unfold, the Brewster Family was comprised of Mr. and Mrs. Brewster and two children, and at the time Mrs. Brewster was a stay-at-home mother. With the onset of the pandemic, the Brewster Family were locked into Mr. Brewster's law practice for guaranteeing all of their income, with no prospect of Mrs. Brewster going back to work as most businesses were shut down and surviving on PPP money.

16.     None the less, the Brewster Family survived, but just barely. Had it not been for the income Mr. Brewster got in 2021, the Brewster Family would have been totally bankrupt.

17.     It was during this time between 2020 and 2021 where taxes had not been filed, this included 2019 taxes. Up until this time the Brewster Family had always been up to date with their taxes, in fact, Mr. Brewster had paid taxes to the State of New Jersey and the Federal Government since he was fourteen years old, basically his entire adult life, and never balked or complained.

18.     This was a difficult time for Mr. Brewster and the Brewster Family, essentially unprecedented and without any known corollary. It should be noted that at this time, in addition to the pandemic, Mr. Brewster, just prior to the onset of the pandemic had gone into deep treatment for an untreated traumatic condition resulting from childhood physical and sexual abuse. When the heart of the pandemic was over and the dust cleared enough for Mr. Brewster to catch his breath, he knew taxes had to be filed.

19.     As never having gone through something like this, the Brewster Family did not know where to turn. It was during this time that Mr. Brewster had seen Tyler Bennett, Esq., a tax attorney from California, who appeared on a website that he visited frequently that streamed live shows, and liked what he had to say, and it seemed he offered a good service that Mr. Brewster

5

needed at that time. Mr. Benett advertised that he as an attorney knew better than a clerk at the IRS and that you would only "pay what you owe" and nothing more.

20.     At the time, based on Mr. Bennett's status as an attorney, and what seemed to be a keen understanding of the tax code, and Mr. Brewster knowing the Brewster Family was going to have a huge tax liability as Mr. Brewster somehow had generated income during an unprecedented economic shutdown. That being said, Mr. Brewster also knew that all income he did generate did nothing more than go to basic living expenses during the pandemic, and even with the generation of income, the Brewster Family still had to liquidate all retirement savings to continue on and by August 2022, even with the income that was earned was living hand to mouth.

21.     Further, Mr. Brewster knew there would be penalties, etc., for not filing, and the unfortunate reality based on not being able to properly do even the most rudimentary accounting during this time. That being said, and although Mr. Brewster is an attorney, he was not expert at the Internal Revenue Code ("IRC") and thought it better to leave it to an attorney who professed to be an expert in the IRC, such as Mr. Bennett.

22.     Even with generating enough income to survive, this treading of water, was coupled with the fact that the little retirement savings/financial safety net the Brewster Family had gotten sapped on needed expenses such as home improvements, etc., as the starter home they had purchased became only place they could afford to stay after the real estate market's prices inflated to the point where even if they sold their home they had nowhere to buy. Essentially, with the income they did generate, they had nothing accept their home, cars, will all income going to the children, to maintain the business, and the mortgage, with nothing to show at the end of each month.

23.     On August 20, 2022, in an act of desperation, Mr. Brewster retained the services of

GATL for filing of 2019-2021 taxes, as well as to have them form a business entity to deal with tax liability moving ahead in a fashion which guaranteed less tax liability and easier compliance, and to ensure the taxes, the burden of which had increased under the Trump Administration, was met on a regular basis and what not accrue in such a manner moving forward.

24.     At that time, on or around August 20, 2022, Mr. Brewster paid $4,000 to GATL, on a credit card as he was not liquid, and executed a number of documents, including a Power of Attorney and Declaration of Representative naming Tyler Bennett, Esq. as appointed representative. At that time, the GATL representative who had fielded Mr. Brewster's initial call told Mr. Brewster and assured him that he was in "good hands." At this point Mr. Brewster was told they would file all the relevant years necessary and then advise him accordingly. Upon payment a contract was sent to Mr. Brewster, as well as some other forms, including a power of attorney naming Tyler Bennett, Esq. as attorney in fact to negotiate with the Internal Revenue Service ("IRS"). (See **Exhibit A** - GATL Contract and Power of Attorney).

25.     As the Brewster Family started to dig out of the hole, and the tax returns for the couple of years got compiled, and the formation of the new entity took place, GATL employees slowly started to suggest that Mr. Brewster finance having the tax debt, penalties, etc., resolved through some sort of mediated process to be initiated by GATL attorneys/employees, etc., on behalf of the Brewster Family, to seek all possible hardships etc. from the pandemic time, etc. Mr. Brewster was then told this would cost $25,000.

26.     The key person at this time making all these assertions on behalf of GATL was a man named Paul Conrad ("Mr. Conrad"). He would consistently state that there would be a large tax debt, but that they would be able to find ways to reduce this debt and resolve it for the least amount possible. Mr. Conrad even went as far as going through Mr. Brewster's assets, and seeming

to do a financial analysis to reach his conclusions. Looking back, it seems this was a way to make it seem the GATL knew what they were doing and would get the lowest amount of possible tax debt negotiated. This turned out to be completely false.

27.     At that time, Mr. Brewster was waiting on a case to settle for significant value and was not liquid. Of course, this fact, did not stop Mr. Conrad from constantly trying to sell the service. No, it was at this point Mr. Conrad said that he would see if Mr. Brewster qualified for credit to finance the $25,000.00 cost, so that GATL "could put all hands on deck for this" and that the lump sum would get things going to get this over with. Eventually, after providing some information to the GATL employee, and having never spoken to any representative of a credit or financing company, this amount was reportedly to be financed with Defendant Equity Sales Finance, Inc. This was toward the end of 2022. This was executed and GATL was paid, not too soon afterward Mr. Brewster paid this financing off in one lump sum, but for more than the financed amount due to interest. The eventual payment would be around $28,000. (See **Exhibit B** - 01/06/2023 Financing Agreement signed with Equity Sales Finance, Inc.).

28.     It was at this time Mr. Brewster signed a rider to the original contract for the resolution of the tax debt with both the IRS and New Jersey taxing authorities. At the time Mr. Brewster thought he and his family could finally put the nightmare of the pandemic years behind them and that GATL would actually help them. It is now clear this was illusory and merely a way of taking advantage of someone in a weakened position to forward essentially a corrupt scheme that preyed on helpless families. (See **Exhibit C** - Rider to GATL Contract).

29.     As 2023 started to unfold, and GATL had the taxes filed, Mr. Brewster received some early notifications from the IRS as to his family's tax debt, but by April or May of 2023, these stopped coming. As opposed to the ceasing of notices being sent from the Federal

Government, the State of New Jersey started to constantly demand payment on the tax debt as if no one had been in contact with them. At this point Mr. Brewster could have paid them, but as he had retained GATL to deal with this was expecting get to a global number between the two debts so he could make payments accordingly, or at least check with GATL to see where their negotiations with the State stood prior to making a payment.

30.      At first Mr. Brewster thought it was aggressive collection tactics on the part of the State of New Jersey, and that GATL was doing what they said they would do, and were paid to do, and negotiating with the IRS and the State to get to a number after seeking all possible hardship and other programs accordingly. It was during this time that Mr. Brewster would have an occasional email looking for random revenue information from GATL but nothing further, at least nothing substantive on presenting hardship information to either the State or Federal Government.

31.      On May 17, 2023 Mr. Brewster received an email from an ATS employee, Jennifer Martinez, stating that she was now the person who would be handling Mr. Brewster's case moving forward. In the body of the email, she stated that first, before they could resolve the 2019-2021 tax debt, they needed to file 2022 taxes first before they could be resolved. This was never discussed with Mr. Brewster prior to paying $25,000.00 to GATL. At first, Mr. Brewster thought that this was what was normally done, but looking back, now realizes it was nothing more than a stall tactic.

32.      It should be noted that during this time, calls would come from ATS for what was termed "compliance purposes" and a series of useless questions which had already been answered were answered again regarding tax preparation issues, noting to do with any resolution of the tax debt. Looking back, it's clear this was another tactic to make is seemed like GATL/ATS was doing something useful, when in fact they had taken $25,000.00 never intending on providing any resolution.

33.     Eventually, as the notices started to mount and the demands of the state became more turgid, Mr. Brewster started sending the notices to GATL and asking what the status was and what I should do about the notices and whether he should pay the debt or wait until GATL had reached a resolution or exhausted its efforts, etc. All of these emails went unanswered. Never did GATL answer any of these emails, copies of which are all available, as well as a number of texts to Paul Conrad, who had sold Mr. Brewster on the resolution plan and financing. This went on for several months. As this was happening, Mr. Brewster started to notice that GATL employees would call him me from various numbers, many times 1-800 numbers, that were not listed on caller ID as GATL or an associated d/b/a. This was an early sign to Mr. Brewster that he had gotten involved with the wrong people.

34.     On June 26, 2023, Mr. Brewster received a call from an unknown and unidentified 1-800 number. As it was unidentified and did not list itself as a GATL number or other known d/b/a names of their company, Mr. Brewster let it go to voicemail. When he saw a message was left, he checked it immediately. When he listened to the message, he heard the caller identify himself as Mark, and he was supposedly calling him to provide "important updates" on Mr. Brewster's resolution. In the message he left a 323-area code number to call back to. When Mr. Brewster attempted to call him back, which was more than several times, he left detailed messages each time, and neither Mark, or anybody else from GATL, never bothered to respond as to any resolution of the tax debt or whether they were in contact with the taxing agencies, etc.

35.     From June 2023 on, the State had been constantly calling and asking to speak to Mr. Brewster and/or his wife regarding the Brewster Family tax debt. At first, Mr. Brewster never responded because he never heard back from GATL and was not going to discuss anything until he spoke to GATL as to their communications with the State, who he thought were his attorneys.

The lack of communication from GATL caused a further delay with speaking with the State, and GATL at this time basically left the Brewster Family defenseless against the constant demands and threats of the State of New Jersey.

36.     It was during this time, other members of GATL calling themselves ATS, were stating that they needed to file 2022 taxes before anything could happen. This seemed to be a way to keep Mr. Brewster thinking work was being done on his file, when in fact, as far as resolution was concerned, nothing was being done, and no calls were being made, or discussions being had with either Mr. Brewster or the taxing agencies. In fact, work was constantly done to file for 2022 taxes, but there was no word at any time as to the status of resolving the debt for the tax years GATL filed for 2019, 2020, 2021. Looking back, it seems clear this was a way of continuing to have Mr. Brewster think something was being done to resolve the prior tax debt, when in fact, nothing was being done or would be done.

37.     From roughly the end of May 2023 until late July of 2023 Mr. Brewster heard nothing from the State and thought that GATL had finally spoken with them. Then, on or around August 15, 2023, Mr. Brewster received a letter from Pioneer Credit Collection Services, the collection agent for the New Jersey Division of Taxation dated July 26, 2023.

38.     The letter presented a very forceful demand for payment from the State of New Jersey with calculations of interest and penalties that were beyond what Mr. Brewster could continue to stomach, as they had been added since the beginning of 2023, during time Mr. Brewster thought his tax debt, penalties, etc. was being negotiated with the State. It also should be noted that they said since Mr. Brewster had been in touch with them, he had waived any opportunity to seek any programs or for waiver for the penalties and fees. It was at this stage Mr. Brewster started

to think that he had been scammed by GATL.

39.     After receiving the July 26th letter from the State, Mr. Brewster started to make inquiries with the State, realizing that GATL had likely done nothing for him. On August 25, 2023, he finally spoke to somebody at the State, and they informed him and confirmed that no power of attorney had ever been filed with them, by anybody, much less GATL. At this point, Mr. Brewster knew he had been scammed and he started to relay his story as outlined above with the State's representative.

40.     Upon being informed of the situation with Mr. Brewster's taxes and with GATL, she said that Mr. Brewster could then go through the process that he had hired GATL to go and do and see if he could still get relief from the penalties, etc., but that the State never offered any relief for COVID times. This was never told to Mr. Brewster by Mr. Conrad prior to offering the fake resolution service, a further sign Mr. Brewster had been scammed.

41.     At this point, the best Mr. Brewster could do was to ask for the State to eliminate the penalties and some of the interest on the debt and pay a set amount based upon their calculations, which could change, based on whether the State accepted his application or not. Mr. Brewster told them this would take some time and asked that they be patient as he had been scammed and now needed to do what he had retained GATL to do. They told Mr. Brewster that it would have been better if he had contacted them earlier, or that someone had contacted them, but now they gave him until September 10, 2023, to pay them and get into a payment agreement, otherwise his case would go to default.

42.     It was at this time, that Mr. Brewster's financial situation would allow for payment of a tax debt as inflation in the country had saw a 400% price increase on all goods and services and the money that was set aside for the tax debt, once GATL negotiated same, would have easily

12

been paid. Unfortunately, this was not to be the case. As such, Mr. Brewster had to borrow the amount of the likely tax debt to be paid from his mother so that the State could be paid.

43.     Eventually, a letter was drafted by Mr. Brewster to explain why he had been able to pay on time and the situation with GATL. This was done and the penalties and fees were removed, and the tax debt eventually paid for 2019 through 2021 paid at a cost of approximately $20,000. Thankfully, Mr. Brewster was able to do the convincing and explaining he had paid GATL to do. (See **Exhibit D** - Letter to NJ Division of Tax explaining tax situation).

44.     After having endured what he had endured with the State of New Jersey, Mr. Brewster feared the worst regarding whether GATL had done anything with regard to negotiating with the IRS. As such, Mr. Brewster started work on a demand letter to demand answers from GATL on where things stood and what to expect from them, if anything and whether there had been any contact with the IRS or not.

45.     On September 1, 2023 the letter was sent to GATL/ATS by priority mail. The letter was received at the two main addresses for GATL/ATS on September 5, 2023. (See **Exhibit E** - 09/01/2023 Letter to GATL demanding a Status, etc.).

46.     As of today, there has been absolutely no contact from GATL to Mr. Brewster in regard to the resolution of his tax debt and/or responding to the demand set forth in Mr. Brewster's September 1st letter. The complete lack of transparency, and the shady manner in which the whole involvement with GATL has played out, it is on information and belief that GATL never intended on offering any tax resolution services, but merely did tax preparation work, stating they would resolve existing tax debt through negotiation, but never doing as such. In the process GATL fleeced Mr. Brewster out of approximately $30,000.00. This $30,000.00 could have easily gone toward the tax debt instead of a never-to-be-provide service which Mr. Brewster believes to be in

conjunction with offering financing through their co-conspirator Equity Sales Finance, Inc.

47.     Based on what has transpired, it is on information and belief, that GATL merely intends on doing basic tax work, but portray to unsuspecting victims, that somehow, they could achieve a better result of unresolved tax debt than an individual taxpayer can render by themselves using the same relief tactics, programs, rules, etc. This is an utter lie as shown based on what Mr. Brewster was able to achieve with the State of New Jersey, as well as the fact that no one from GATL ever bothered to get in touch with the State of New Jersey regarding the tax debt. This proves that GATL never intended on resolving anything.

48.     In fact, after the financing paid out to GATL, there was no work done on resolving any tax debt, as shown with what occurred with the State of New Jersey. Although it is not clear as to the status of the IRS's dealings with GATL, if any, it is Plaintiff's belief that there have been no substitutive steps taken in this regard by GATL, otherwise they would have responded to Plaintiff's demand for a status. This purposeful ignorance of Plaintiff's demands proves that GATL did not and will not be seeking resolution.

49.     Another telling fact, is the complete lack of contact or any indication that any work had been performed, documents filed, and agencies and entities contacted to forestall collection efforts, the accrual of interest, etc., it attempting to resolve the tax debt. At this point, Mr. Brewster would like to see GATL and Equity held responsible for what is clearly an artifice and/or scheme to defraud helpless families who have gotten behind on their taxes an illusory service for which is sold up front, with financing, and then never actually provided.

**FIRST COUNT**
VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
(N.J.S. 56:8-2 et seq.)

50.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if fully

14

set forth herein.

51.     The Consumer Fraud Act, N.J.S.A. 56:8-2 provides:

The act, use or employment by any person of any unconscionable
commercial practice, deception … in connection with the sale … of
any merchandise …is hereby declared to be an unlawful practice.

52.     That "merchandise" includes goods and services.

53.     That Defendants' statements, representations, and conduct in offering services never to be provided and for accepting $25,000.00 was unconscionable as discussed in Paragraphs 1 through 49 of the Complaint above. These acts and statements by Defendants can be considered "unconscionable commercial practice" and "deception" and in violation of the New Jersey Consumer Fraud Act.

54.     In addition to not providing the agreed upon services and in engaging in generally unconscionable tactics in securing payment from Plaintiff, Defendants' assertions as "being in good hands" and "we can get this down" induced Plaintiff to agree to pay for Defendants' alleged services. Further, the continued practice of continuously contacting Mr. Brewster in a manner that caused Mr. Brewster to believe that something was being done, should be considered unconscionable commercial practice as well as acts to continue the artifice or scheme to defraud Mr. Brewster.

WHEREFORE Plaintiff, Jordan P. Brewster, demands judgment against all Defendants, jointly and severally for:

A.      Sanctions;

B.      Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.      Punitive damages;

15

D.     Attorneys' fees, interest and costs of suit;

E.     Trebled Damages; and

F.     Any other relief as the Court deems just and equitable.

## SECOND COUNT
Civil RICO
(18 U.S.C. § 1964)

55.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

56.     Defendants are involved with artifice and scheme to offer tax resolution services, including the financing of these services, seemingly, as "attorneys" that can achieve a greater result than just a mere tax preparing service.

### *The scheme*

57.     The scheme is the following: Individuals with unfiled taxes contact GATL after seeing spokesperson Tyler Bennett, Esq. on certain shows, websites, etc., that have national exposure, who states that the client will only "pay what they owe" and that GATL, who are attorneys, will know better than a clerk at the IRS what taxpayers can claim.

58.     Once the client calls and signs up, GATL has the client sign an initial contract, takes a $4,000.00 deposit and sets about tax preparation. At this time a power of attorney is filed using Bennett's name with the IRS. Once the taxes are prepared, and the liability made clear, GATL advises the client that they should pay GATL to resolve the debt. Most of the time the client can't pay the government or GATL, so GATL very conveniently has financing available through Defendant Equity Sales Finance, Inc., which based on information and belief, is almost always approved, for payment of the service, which for some reason is $25,000.00. At that time, an

16

addendum is executed which, if it is a taxpayer in a state that collects its own income tax, lists that GATL should file for state and federal durable hardship settlement for the relevant tax years.

59.     Through the scheme, Equity pays GATL and the client then starts to pay Equity for the service in an usurious credit arrangement that if paid out of the entirety of the agreement would take years to pay, and at a high rate of interest, a based on information and belief must be a very convenient and lucrative arrangement between Equity, GATL, and Bennett.

60.     Defendants in the process of putting forth this scheme will continuously contact the victim regarding tax preparation services for the stated purpose of eventually resolving tax debt from previous years, but first one more year has to be filed. During this time, no action was taken to resolve any tax debt, which included Federal and State tax liability. This means that for more than six months after the contract addendum was signed, no attempt is made to file for any hardship as was contracted for. This was proven in this instance when the State of New Jersey stated that in the six-month period after having contracted and paid for the resolution of Mr. Brewster's tax debt, they were never contacted by GATL. Mr. Brewster attempted to bring this to GATL's attention numerous times but was merely ignored. Meanwhile, the tax preparation section through what is referred to as "ATS" goes about spending longer than normal compiling simple tax preparation materials that would take a normal accountant a much shorter time to prepare, thus dragging this out even further.

61.     In this instance, Mr. Brewster ended up negotiating his own settlement with the State of New Jersey while GATL ignored his pleas for help, for which he paid them $25,000.00. The manner in which GATL dealt with Mr. Brewster shows an intentional methodology employed by GATL to continue the scheme, and making him think something, besides basic tax return preparation, was being done. The continuous emails from new staff members, stating each time

17

they were now responsible for the file and would be moving ahead, but that 2022 taxes had to be filed first. Even after providing everything well in advance, GATL strung Mr. Brewster along into thinking all would be well, and his file was being worked on, meanwhile, no one had contacted the state taxing authority or filed any paperwork etc., to seek any relief from the tax liability.

62.    Based on the emails sent, and the phone calls, as well as the processing of a credit application intended to pay for a service that was not to be rendered, wire fraud was conducted (the predicate acts), and with the payment of $25,0000.00 to Equity, the circle of conspiracy is complete with each of these entities feeding off of each other for the sale of never-to-be-provided tax resolution services. It seems that early filing of the power of attorney with the IRS tends to adjust standard collection tactics at the federal level, but when it comes to trying to stall the state authorities, nothing is done, and as was in this instance, very little could be done with the State of New Jersey beyond what Mr. Brewster was able to accomplish, as when Mr. Brewster went to seek relief that was stated by GATL representatives to  have existed, never did exist, a further sign of fraud and deceit on the part of GATL. By the time the client finds out that they have been scammed, they have paid the $25,000.00 and are already in a financing agreement with Equity.

WHEREFORE Plaintiff, Jordan P. Brewster, demands judgment against all Defendants, jointly and severally for:

A.    Sanctions;

B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.    Punitive damages;

D.    Attorneys' fees, interest and costs of suit;

E.      Trebled Damages; and

F.      Any other relief as the Court deems just and equitable.

### THIRD COUNT
(Fraud)

63.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

64.     Defendant GATL, using their finance company, Equity, advertise that they can provide a service where you only pay what you owe. Nothing more. In doing this they sell clients on preparing taxes for unfiled tax years, and that they can seek a hardship or other amelioration of the tax debt.

65.     Through a two-stage process, the client is told by GATL that first they must prepare the taxes and see what can be done. Once this is done, if there is a large enough debt, they offer tax resolution services, to get the amount "down." Although the initial tax services are priced affordably at $4,000.00 the resolution service is priced at a whopping $25,000.00. It is not clear how this number is reached. This is almost always too much for the client to bear, so they have handily available financing from Defendant Equity. Quickly, the inducements are made, and the financing agreement tendered for the client's signature.

66.     Once paid, essentially nothing is done. This was proven in this instance by the complete lack of contact from GATL regarding any resolution-based questions and that seven months after signing the agreement for resolution, the State of New Jersey verified to Plaintiff that no contact whatsoever, no power of attorney filed, or no other filings had been made by GATL.

67.     Plaintiff was induced by false promises that he was in "good hands" and that they could get his tax debt "down" and paid $25,000.00, through a corrupt financing agreement, for

never intended to be provided service as shown by verification from the State of New Jersey that nothing had been done on Mr. Brewster's behalf to seek relief from the State for seven months after the agreement was signed. As such, Mr. Brewster and the Brewster family have been harmed for their detrimental reliance.

WHEREFORE Plaintiff, Jordan P. Brewster, demands judgment against all Defendants, jointly and severally for:

A.    Sanctions;

B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.    Punitive damages;

D.    Attorneys' fees, interest and costs of suit; and

E.    Any other relief as the Court deems just and equitable.

### FOURTH COUNT
Breach of Contract

68.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

69.    Plaintiff executed an agreement for the filing of hardship settlement for tax years 2019-2022 on December 22, 2022. From that date until July of 2023 Plaintiff believed that actions were being taken to file the necessary paperwork with the relevant state and federal agencies.

70.    From January 2023 through until July 2023 repeated communications to GATL regarding the resolution of the Plaintiff's tax debt went completely ignored and unanswered in the face of growing tension with the state taxing authority, who were consistently demanding payment in full, plus all penalties, and fees, showing that no negotiations or could have ever taken place

between the State and GATL.

71.     In July of 2023 Plaintiff received verification from the State of New Jersey that no paperwork, no power of attorney, was ever filed with them.

72.     Upon sending a written demand sent by Plaintiff to GATL asking for an explanation of what was going on, Plaintiff received no response from GATL.

73.     Based on the failure to take any action with the State of New Jersey in any fashion, or to answer even the most basic questions from Mr. Brewster, GATL breached the contract between them and Mr. Brewster.

74.     Nowhere does it state that the filing of 2022 taxes was a condition precedent to the filing of even the most basic paperwork with the State or the IRS. As such, GATL has breached the contract.

WHEREFORE Plaintiff, Jordan P. Brewster demands the following relief against the GATL Defendants:

    A.     Compensatory damages;

    B.     Attorneys' fees, interest and costs of suit; and

    E.     Any other relief as the Court deems just and equitable.

**FIFTH COUNT**
**(Attorney Malpractice as to Defendant Tyler Bennett, Esq.)**

75.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

76.     Attorney Tyler Bennett, Esq. held himself out as an attorney who could negotiate

with the relevant taxing authorities as an attorney on Mr. Brewster behalf to reach a favorable settlement of existing tax debt.

77.     In fact, Mr. Brewster executed a power of attorney authorizing Mr. Bennett to conduct negotiations on his behalf with the IRS. (See Exhibit A).

78.     Based on the fact that Mr. Bennett, nor anyone from his organization, GATL, has every bothered to speak with Mr. Brewster regarding the resolution of his tax debt since paying $25,000.00 and for having failed to take any action with the State of New Jersey, deviated from the accepted standard of care recognized by the State of New Jersey for the practice of law. Further, although Mr. Bennett was named as a representative for Mr. Brewster with the IRS, it appears that he could never be a representative in New Jersey as he is not admitted to the practice of law here.

79.     As such, and in consideration of the foregoing, Mr. Bennett has deviated from the accepted standards of care and has violated the generally accepted rules of professional conduct.

80.     By engaging in the conduct set forth in the foregoing paragraphs Defendant Tyler Bennett, Esq. has breached the contract for the provision of legal services to the Plaintiff.  As a result of the defendants' breach, the Plaintiff has been damaged in that he has incurred significant costs, has suffered loss of the holistic enjoyment of life, has had severe psychiatric injury, loss of wages, etc.

WHEREFORE Plaintiff, Jordan P. Brewster, demands the following relief against Defendant Tyler Bennett:

A.     Sanctions;

B.     Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.     Punitive damages;

D.     Attorneys' fees, interest and costs of suit; and

E.     Any other relief as the Court deems just and equitable.

### SIXTH COUNT
**(Negligence)**

81.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

82.     As indicated in the foregoing paragraphs, as a result of the Defendants' undertaking to provide legal services to the Plaintiff, and their employment by the Plaintiff for that purpose, the Defendants had a duty of care to the Plaintiff to exercise the skill and knowledge ordinarily possessed by attorneys, tax professionals, and financing companies under similar circumstances, to exercise a reasonable degree of care, skill, and dispatch in carrying out the business for which they were employed.

83.     By engaging in the conduct set forth in the foregoing paragraphs, the Defendants negligently breached their duty of care to the plaintiff.

84.     As a result of the defendants' breach of their duty of care the plaintiff has been Damaged.

WHEREFORE, Plaintiff, Jordan P. Brewster, against all Defendants, jointly and severally, for compensatory damages, punitive damages, attorneys' fees, interest, costs of suit, and such other and further relief as the Court deems just and proper.

### SEVENTH COUNT
(Negligent and Intentional Infliction of Emotional Distress)

85.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same

23

were fully set forth at length herein.

86.     Plaintiff sought the advice and counsel of what had been professed as a tax attorney to settle what was to be a significant tax debt. Instead, Plaintiff paid a large sum of money and got nothing in return, not even a phone call from GATL to the State to forestall collection efforts, etc.

87.     Further, GATL never responded to Mr. Brewster's requests for assistance in dealing with the State's collection tactics, not even answering to say that it was Mr. Brewster's problem, or that they were not contracted to do such work, etc. Nothing.

88.     As result of GATL's obvious fraud, and lack of contact after having been paid to resolve Mr. Brewster's debt, Mr. Brewster suffered anguish the likes he had never dealt with before, including having to borrow money from family members to pay a tax debt that could have been paid early on, had GATL bothered to confer with Mr. Brewster.

89.     GATL and Equity's actions and fraud are outside the bounds of what should be considered normal behavior for a civilized society. As such, Mr. Brewster has suffered sleepless nights and has been forced to file a lawsuit, all of which has taken a toll on Mr. Brewster's mental health, stamina, and ability to generate income for his family.

WHEREFORE Plaintiff, Jordan P. Brewster, demands the following relief against Defendants:

A.     Sanctions;

B.     Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.     Punitive damages;

D.     Attorneys' fees, interest and costs of suit; and

24

E.      Any other relief as the Court deems just and equitable.

## **EIGHTH COUNT**
**(Punitive Damages)**

90.      Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

91.      The Defendants' actions and or omissions were actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeable might be harmed by those acts or omissions.

WHEREFORE, the Plaintiff demands judgment on the for punitive damages against all Defendants.

Respectfully submitted,

_____
JORDAN P. BREWSTER

Dated: November 7, 2023

## **JURY DEMAND PURSUANT TO L.CIV. R. 38.1**

Plaintiff demands a trial jury as to all issues so triable.

## **CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted,

_____
JORDAN P. BREWSTER

Dated: November 7, 2023